**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| CARO ASSOCIATES II, LLC, | : | |
| | : | Civil Action No. 09-907 (SDW) (MCA) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BEST BUY CO., INC., BEST BUY | : | |
| STORES, LP, | : | March 6, 2012 |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**WIGENTON**, District Judge.

Before the Court are Defendants Best Buy Company, Inc., ("Best Buy, Inc.") and Best Buy Stores, LP's ("Best Buy LP") (collectively "Best Buy" or "Defendants") Motion for Summary Judgment and Plaintiff Caro Associates II, LLC's ("Caro" or "Plaintiff") Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56(c) (collectively "Motions"). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Venue is proper in this District pursuant to 28 U.S.C. § 1391. These Motions are decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court grants in part, and denies in part, Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Partial Summary Judgment.

## FACTUAL AND PROCEDURAL HISTORY

In May 2000, Best Buy, Inc., leased a warehouse located at 75 Carter Drive in Edison, New Jersey, from Plaintiff ("property" or "warehouse"). (Compl. ¶ 4.) Caro and Best Buy, Inc., executed a Lease Agreement ("original lease"). (Defs.' Br. Wolin Certification ("Certif.") Ex. D.) On May 31, 2000, Best Buy, Inc., entered into an "Assignment and Assumption of Lease"

1

agreement with Best Buy LP.  Pursuant to the assignment agreement, Best Buy, Inc., transferred all of its rights and interests under the original lease to Best Buy LP, and Best Buy LP assumed the performance of all obligations and liabilities.  (Pl.'s Br. Buehler Declaration ("Decl.") Ex. D, at 1-2.)

Article 15.01 of the original lease required Defendants to "take good care of the Demised Premises, the fixtures and appurtenances therein, and shall not do, suffer, or permit any waste . . . [as well as] keep and maintain all interior portions of the Demised Premises."  (Pl.'s Br. Buehler Decl. Ex. C, at 21.)  Additionally, under Article 22.01, Best Buy was required to restore the property to the "condition existing" at the time tenancy commenced with respect to certain alterations.  (Id. at 28.)

Subsequently, on October 13, 2004, Caro and Best Buy executed the Second Amendment to the Lease ("second amended lease") extending the lease to May 31, 2009.  (Compl. ¶ 9.)  In addition to extending the lease, Paragraph 4(a) of the second amended lease titled "Tenant Improvements" required Best Buy to make certain improvements and renovations to the property.  (Pl.'s Br. Buehler Decl. Ex. F, at 2.)  However, under Paragraph 4(g) of the second amended lease, Defendants were not required to remove the improvements they made pursuant to the second amended lease at the end of tenancy.  (Id. at 4.)

Pursuant to Paragraph 4(a) of the second amended lease, Best Buy performed several improvements to the warehouse.  Of significance are two of such improvements.  First, Best Buy sought to paint black and yellow lines over the floors of the warehouse ("striping") because that is the system it employs to mark aisles and exit paths as well as indicate where each product type should be stored.   (Defs.' Br. Wolin Certif. Ex. B, Patzke Dep. 48:4-19, 53:24-54:10.) Defendants, with the assistance of Plaintiff's architect, Phil Harris ("Harris"), prepared

specifications and drawings for the various improvements and alterations they wanted to perform at the warehouse.  (Id. at 46:17-19.)  Defendants, consistent with Paragraph 4(a) of the second amended lease, provided Caro with the specifications of its intended improvements.  (Id. at 48:4-19, 53:24-54:10.)   The striping was included on the blueprints provided to Plaintiff for renovation review and approval.  (Id. at 48:7-9.)  Although the landlord, Jack Sutton ("Sutton"), could not recall if Best Buy provided him with the specifications for the work it performed, he testified that "Caro was aware of all of the work [Defendants] did in conjunction with" the second amended lease.  (Defs.' Br. Wolin Certif. Ex. C, Sutton Dep. 66:21-24.)  Second, Best Buy removed bathrooms from the property to expand the service area.  The bathrooms were also included in the specifications Best Buy provided to Plaintiff for review.  (Id. at 46:7-19.)

On August 29, 2007, Best Buy accelerated the termination of the lease to May 31, 2008.  (Compl. ¶ 10.)   Subsequently, on November 21, 2007, the parties entered into the Third Amendment to Lease and extended the lease to August 31, 2008.  (Id. ¶ 11.)  On August 31, 2008, Defendants vacated the warehouse without removing the striping or restoring the bathrooms.  (Id. ¶¶ 14, 16.)   As part of Defendants' notice and termination obligations, Defendants coordinated with Plaintiff regarding any remaining work and repairs Best Buy needed to complete before vacating the property.  (Defs.' Br. Wolin Certif. Ex. B, Patzke Dep. 118:1-122:23, 135:24-136:21.)  On May 29, 2008, Randall Patzke ("Patzke"), Defendants' senior project manager, conducted a walk-through of the warehouse with Sutton, and Caro's caretaker, Magdy Keriakos.  (Id. at 118:1-122:23, 135:24-136:21.)   During the walk-through, Sutton identified repairs Best Buy had to complete.  (Defs.' Br. Wolin Certif. Ex. N.)  Notably, Plaintiff did not ask Defendants to remove the striping.  (See Defs.' Br. Wolin Certif. Exs. M, N.)

In addition, according to Patzke, during the walk-through, Sutton informed him that Caro intended to sell the property in an "as is" condition to Credit Suisse; therefore, Caro would accept $45,000 from Best Buy in lieu of Best Buy completing the necessary repairs.  (Defs.' Br. Wolin Certif. Ex. B, Patzke Dep. 57:11-21.)  As a result, on September 9, 2008, in response to an email from Sutton detailing the repairs[1] Best Buy had to complete, Dan Manning ("Manning"), Defendants' employee wrote:

> I know during our phone conversation that you had a rough estimate of about $400,000.00 for repairs.
>
> Randy did state to you last week that we are willing to go outside this issue and issue a check for the amount $45,000.00 to resolve all these issues.  If ownership accepts this, then I can get a check issued, if not, then we will require the repairs to be done and invoice Best Buy for reimbursement.
>
> If you accept the one[-]time payment of $45,000.00 to resolve these issues, I will complete this and get a check to you as owner.

(Defs.' Br. Wolin Certif. Ex. H, at 1-2.)  Subsequently, Sutton replied: "To the extent that you wish a formal document, please forward the same for review of our attorneys.  Otherwise[,] please forward the check for $45,000.00[.]"  (Id. at 1.)  Ultimately, Defendants did not tender the $45,000 check because they did not receive a signed release from Caro.  (Defs.' Br. Wolin Certif. Ex. B, Patzke Dep. 109:1-7; Defs.' Br. Wolin Certif. Ex. J.)

However, on November 1, 2008, Plaintiff and Credit Suisse were unable to reach an agreement on the sale of the property.  (Defs.' Br. Wolin Certif. Ex. C, Sutton Dep. 127:19-22.)  As a result, in December 2008, Plaintiff retained Jones Lang LaSalle Brokerage, Inc., ("JLL") to market and lease the warehouse.  (Pl.'s Br. Buehler Decl. Ex. H, Sutton Dep. 116:21-22.)  Shortly thereafter, JLL advised Plaintiff that the striping deterred potential tenants from renting

---

[1] Interestingly, neither the removal of the striping nor the restoration of the bathrooms was on the list of items Best Buy had to repair.  (See Defs.' Br. Wolin Certif. Ex. H, at 2-3.)

4

the warehouse.  (Defs.' Br. Wolin Certif. Ex. W.)  JLL, therefore, recommended that Caro remove the striping.  (Id.)  Plaintiff retained Questmark Flooring Systems ("Questmark") to remove the striping and repair the warehouse floor.

On December 16, 2008, Plaintiff sent Defendants a demand letter with repairs and estimates.  (Defs.' Br. Wolin Certif. Ex. K.)  Plaintiff sought $861,607.55 in damages.  (Id. at 3.) The damages included: $237,000 for repairing the warehouse floor; $487,000 for repair and restoration of the exterior parking lot; $4,884.55 for replacement of exterior sign; $26,835 for replacement of three unit heaters and six drinking fountains; $18,150 for repair and replacement of railings and steel bollards; $32,203 for replacement of the restrooms;  $7,150 for replacement of a fence; $15,200 to repair the roof drains; $7,600 to paint the office; $13,585 to replace the carpet; and $12,000 for electrical repairs.  (Id. at 2-3.)

In February 2009, Questmark commenced repairs on the warehouse floor using a high finish in accordance with Sutton's request.  (Defs.' Br. Wolin Certif. Ex. Q, Wagner Dep. 27:20-21, 21:7-9, 22:22-24.)  Questmark projected that the repairs would and could be completed between thirty to forty-five days.  (Id. at 32:19-25; Defs.' Br. Wolin Certif. Ex. O, at 9.) However, Questmark did not complete the repairs until July 2009.  (Defs.' Br. Wolin Certif. Ex. Q, Wagner Dep. 27:22-24.)  Gregory Wagner ("Wagner"), Questmark's Project Manager, proffers the following to explain why the project lasted five months: "What we found out, as we started the project, was that they . . . weren't in the need for us to finish quickly.  They were very – take your time with it.  You know . . . there's no rush on it."  (Defs.' Wolin Certif. Ex. Q, Wagner Dep. 29:1-5.)  Wagner also testified that the high finish improved the warehouse floor because it gave the floor characteristics it did not possess before.  (Id. at 20:7-21:21.)

On January 23, 2009, Plaintiff initiated this action in the Superior Court of New Jersey Court of New Jersey, Middlesex County alleging breach of contract and waste.  On March 2, 2009, Defendants removed the action to the United States District Court for the District of New Jersey.  (Docket Entry No. 1).

In July 2009, Plaintiff rented half of the warehouse to Amster.  (Defs.' Br. Wolin Certif. Ex. V, Beyda Dep. 65:12-15.)  Even though Questmark removed the striping and repaired the floor of the warehouse with a high-shine polish, Caro had yet to rent the easterly portion of the property as of February 2, 2010.  (Id. at 65:16-19.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  Id. at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the moving party

meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case."  Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 322-23.

**<u>DISCUSSION</u>**

1. <u>Settlement Agreement</u>

Best Buy maintains that it is entitled to summary judgment because the parties entered into an oral settlement agreement whereby Caro agreed to release Best Buy of any obligations if Best Buy tendered a check for $45,000.  (Defs.' Reply Br. 11.)  Defendants base the existence of

a settlement agreement on the September 9, 2008 emails between Sutton and Manning.  (See Defs.' Br. Wolin Certif. Ex. H, at 1-2.)

Sutton's version of the facts pertaining to the alleged settlement agreement, however, is different.  Sutton testified that he informed Patzke and "possibly" Manning during a telephone conversation that any settlement agreement would be contingent on Caro selling the property to Credit Suisse.  (Defs.' Br. Wolin Certif. Ex. C, Sutton Dep. 135:3-9, 135:15-17, 140:17-18, 127:2:18.)  Sutton concedes that there are no emails or documents indicating that the settlement agreement would be contingent on a sale to Credit Suisse.  (Id. at 139: 24-140:23.)

Certainly, Defendants are correct in arguing that Sutton's September 9, 2008 email to Manning does not mention that the settlement would be contingent upon a sale to Credit Suisse. (Defs.' Reply Br. 10-11.)  Nonetheless, contrary to Best Buy's position, Sutton's testimony is not a "sham affidavit."  (Id. at 11.)  The "sham affidavit" doctrine "refers to the trial courts' practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony."  In re Citx Corp., 448 F.3d 672, 679 (3d Cir. 2006) (internal quotation marks omitted).  The doctrine does not apply in this case because Sutton's affidavit does not contradict his deposition testimony. The contradiction here is between Sutton's email and his deposition testimony.  At this stage, the "court may not make credibility determinations or engage in any weighing of the evidence." Marino, 358 F.3d at 247.  Hence, this Court concludes that Sutton's testimony does create an issue of fact as to the circumstances surrounding the enforceability of the settlement agreement making summary judgment inappropriate.

2. Caro and Best Buy's Motions for Summary Judgment on Lost Rent Claim

Both Plaintiff and Defendants move for summary judgment on Plaintiff's lost rent claim. Caro maintains that pursuant to Article 22.01 of the original lease, Best Buy was required to remove the striping after it vacated the property. (Pl.'s Br. 16-17.) Plaintiff maintains that as a result of Best Buy's failure to remove the striping it was unable to rent the property.[2] Consequently, Caro is seeking lost rent from December 2008 to July 2009. Yet, Defendants assert that Plaintiff's reliance on Article 22.01 is misplaced because the striping was done pursuant to Paragraph 4(a) of the second amended lease, which did not require Best Buy to remove the striping. (Defs.' Opp'n Br. 18.)

To sustain a breach of contract claim, Plaintiff must establish: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that [Plaintiff] performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).

Without determining if Defendants' failure to remove the striping constitutes a breach, this Court concludes Plaintiff has failed to establish that it was unable to rent the property solely as a result of Best Buy's failure to remove the striping. The New Jersey Supreme Court explained the contract principle of damages causation as follows: "The wrong done and the injury sustained must bear to each other the relation of cause and effect; and the damages . . . to be recoverable, must be the natural and proximate consequence of the act complained of." Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly, Inc., Civ. A. No., 07-3023, 2010 U.S. Dist. LEXIS 21160, at *10-11 (D.N.J. Mar. 9, 2010) (quoting Nite Kraft Corp. v. U.S. Trucking Corp., 112 N.J.L. 294, 299-300)); see also Merchants Ins. Co of N.H., Inc. v. 3 R

---

[2] Caro's breach of contract claim is based on a number of damages Defendants' allegedly caused. (See Compl. ¶ 16.) However, for purposes of this motion, Caro is only seeking damages for Defendants' failure to remove the striping. (Pl.'s Br. 2 n.1.)

Painting & Contracting Co., Inc., Civ. A. No., 06-1602, 2009 U.S. Dist. LEXIS 84615, at *13 (D.N.J. Sept. 16, 2009) ("Under New Jersey law, a plaintiff must prove that defendant's breach of contract was both a but for cause as well as a proximate cause of the damages, that is, that defendant's breach was a 'substantial factor' in causing the damages."). Caro bases its lost rent claim on JLL's November 2008 report.  At the time JLL prepared the report, it had shown the property to "between ten and twenty" potential tenants.  (Defs.' Br. Wolin Certif. Ex V, Beyda Dep. 28:13-25.)  The report concluded "that the property was not marketable due to the condition of the warehouse floors. The primary concern was the 'staking plan' which had been painted onto the floors.  These black and yellow lines made showings, to prospective tenants and buyers alike, difficult."  (Defs.' Br. Wolin Certif. Ex. W.)

Nevertheless, other evidence indicates that the striping is not the only reason Caro was unable to rent the property until July 2009.  Perhaps the most telling is that even though the striping had been removed, Caro had only rented fifty percent of the property as of February 2010.  (Defs.' Br. Wolin Certif. Ex. C, Sutton Dep. 65:12-19, 179:17-20.)  In addition, Steven Beyda ("Beyda"), the author of the report testified that not all of the ten to twenty potential tenants lost interest as a result of the striping.  (Defs.' Br. Wolin Certif. Ex V, Beyda Dep. 29:1-10.)  Beyda also stated that he could only remember two potential tenants who specifically indicated that they were not interested in the property as a result of the striping.  (Id. at 30:15-25.)

Additionally, Beyda acknowledged in November 2008, the time Caro began its efforts to rent the property, the country was in "one of the worst recessions in recent history," and as a result it would take longer to rent the property, irrespective of the property's condition.  (Id. at 63:23-64:10.)  Caro's expert, Anthony Rinaldi ("Rinaldi"), also testified that the economic

downturn in late 2008 had a negative impact on the real estate market.  According to Rinaldi, the real estate market was "downhill meaning that less activity, less transactions."  (Defs.' Br. Wolin Certif. Ex. Y, Rinaldi Dep. 93:5-13.)   Rinaldi also testified that the state of the economy "extended absorption time[,]" the time it took to rent property.  (Id. at 83:1-9.)  In addition to the economic downturn, Sutton acknowledged that "[i]t [] takes time to find a tenant[,] especially, for a large property because "not every tenant needs that much space."  (Defs.' Br. Wolin Certif. Ex. C, Sutton Dep. 179:6, 180: 6:16.)

Furthermore, Caro terminated its contract with JLL because Sutton was dissatisfied with JLL's services.  According to Beyda, Sutton believed JLL was "not spending enough money" to market the property.  (Defs.' Br. Wolin Certif. Ex V, Beyda Dep. 70:1-9.)  Hence, JLL's performance and efforts towards marketing the property are additional factors that may have contributed to Caro's inability to rent the property.

Moreover, Beyda testified that between February 2009 and October 2009, Caro received proposals to rent the warehouse from companies such as Pitney Bowes, Prime Source, MGM, and Super Winn but Caro rejected them.  (Id. at 80:4-82:10.)  Caro maintains that one of the reasons it rejected these offers is that the potential tenants only sought "to rent a minimal amount of space . . . making the Premises less marketable to larger tenants who would otherwise seek to rent the entire warehouse."  (Pl.'s Opp'n Br. 16.)  This Court finds this argument unpersuasive because the current tenant, Amstar, only rents fifty percent of the property.  The other fifty percent of the property remains vacant.  (Defs.' Br. Wolin Certif. Ex. C, Sutton Dep. 65:12-19, 179:17-20.)  Similarly, Caro's assertion that it rejected some of the potential tenants because the monthly rent they offered was below market value is unavailing.  (Pl.'s Opp'n Br. 16.)  Caro's expert testified that the economy resulted in "softer prices."  (Defs.' Br. Wolin Certif. Ex. Y,

Rinaldi Dep. 93:5-13.)  Rinaldi clarified that "softer prices" meant that "prices . . . [went] down." (Id. at 93:14-16.)  Additionally, around this period, landlords offered concessions such as "free rent to induce [tenants] to move in[] [f]or a month or two or three."  (Id. at 93:17-19.)

Proof of damages is essential to a breach of contract claim, Gazaro v. The Diocese of Erie, 80 F. App'x. 202, 206 (3d Cir. 2003), and Caro has the burden of proof as to that element. Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003). Overall, this Court concludes that Plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [its] case, and on which . . . [it has] the burden of proof[.]"  Celotex Corp., 477 U.S. at 322-23.  Consequently, Best Buy is entitled to summary judgment on this claim.

3.  Best Buy's Motion for Summary Judgment

a.  Breach of Contract Claim

i.  Striping

Caro asserts that it is entitled to recover the amount it expended on removing the striping and repairing the warehouse floor.  (Compl. ¶ 18.)  Defendants maintain that they are entitled to summary judgment because they were not required to remove the striping.

The pertinent part of Article 22.01 of the original lease states:

> In connection with any alterations or changes made by Tenant with respect to the Demised Premises, Tenant shall be obligated to restore the Demised Premises to the condition existing at the Commencement Date at Tenant's cost and expenses unless Landlord has agreed in writing that Tenant shall not be obligated to do so.

(Pl.'s Br. Buehler Decl. Ex. C, at 28).  However, Paragraph 4(g) of the second amended lease provides: "Notwithstanding anything contained in Article 22.01 of Lease, [Best Buy] shall not remove the Tenant Improvements at the end of the Extended Term, but Tenant may remove [its]

Property pursuant to Article 14.02 of Lease."  (Pl.'s Br. Buehler Decl. Ex. F, at 4) (emphasis added).  Further, Paragraph 7 of the second amended lease states: "In the event any of the terms of the Lease conflicts with the express terms of this Second Amendment, the terms of this Second Amendment shall control."  (Id.)  In Paragraph 4(a) of the second amended lease titled "Tenant Improvements," Best Buy had to perform improvements in nine categories Caro identified.  These categories are:

> (i)     Architectural and engineering fees necessarily incurred;
> (ii)    Renovation to existing offices . . . installation of new carpeting, new ceiling tiles, and electrical work in connection therewith;
> (iii)   Replacement of existing light fixtures and installation of additional lighting and installation of additional venting and exhaust systems in the warehouse area;
> (iv)   Installation of up to four (4) additional dock doors including levelers and seals;
> (v)    Installation of trailer restraints at dock door positions;
> (vi)   Erection of a guard shack with or without a lavatory;
> (vii)  Provision of additional on-site parking;
> (viii) Caulking/sealing of floor cracks in warehouse;
> (ix)   Rework of service Area.

(Id. at 2.)

In addition, Paragraph 4(a) provided: "Notwithstanding the foregoing, in the event Tenant identifies work which it elects to perform in addition to the foregoing categories, or elects to modify the foregoing categories, it will present said change to Landlord for its written approval." (Id.)

According to Patzke, Best Buy striped the floors pursuant to the second amended lease. (Defs.' Br. Wolin Certif. Ex. B, Patzke Dep. 44:7-11.)  Hence, the issue is whether the striping was authorized under Paragraph 4(a) of the second amended lease.

The second amended lease gave Defendants the authority to: (1) "determine the actual scope" of work to be done in each of the categories listed in Paragraph 4(a), (2) modify the

categories, and (3) perform any additional work it identified.  (Pl.'s Br. Buehler Decl. Ex. F, at 2.)  Although Best Buy had broad discretion with the work it performed under Paragraph 4(a) of the amended lease, it was required to present any modifications or additional work to Plaintiff for its <u>written</u> approval.  (<u>Id.</u>)  Here, Caro did not provide written approval for the striping.

However, prior to painting the stripes, Defendants furnished Plaintiff with drawings of the renovations they were about to undertake.  (Defs.' Br. Wolin Certif. Ex. B, Patzke Dep. 46:17-19.)  The drawings, prepared by Plaintiff's architect, indicated that Defendants would stripe the floor.  (<u>Id.</u>)  Sutton also testified that Defendants were required to provide Caro with specifications of any work they did under the second amended lease.  (Defs.' Br. Wolin Certif. Ex. C, Sutton Dep. 66:4-8.)  Although Sutton could not recollect if Best Buy did provide him with the specifications of the work it performed, he testified "Caro was aware of all of the work [Defendants] did in conjunction with" the second amended lease.   (<u>Id.</u> at 66:21-24.) Nonetheless, Plaintiff did not object.  Hence, Defendants assert that Caro waived the requirement to obtain written consent because it knew of the work but failed to object.

"Waiver, under New Jersey law, involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with waiver knew of his or her legal rights and deliberately intended to relinquish them."  <u>Shebar v. Sanyo Sys. Corp.</u>, 111 N.J. 276, 291 (1988).  Here, Best Buy provided Caro with specifications of all of the work it performed under the second amended lease, including the striping.  (Defs.' Br. Wolin Certif. Ex. B, Patzke Dep. 46:17-19.)  Caro did not object to the striping even though it was aware of all of the renovations Defendants undertook.  (Defs.' Br. Wolin Certif Ex. C, Sutton Dep. 66:21-24; Pl.'s Opp'n Br. Sutton Decl. ¶ 5.)  Plaintiff is not claiming that it did not know it had to provide written consent.

Sutton asserts that Caro did not object to the striping because it believed that under Article 22.01 of the original lease Defendants would remove the striping after the lease ended.

This argument lacks merit.  The striping was included in the specifications of renovations Best Buy sought to undertake under the second amended lease.  Therefore, Plaintiff was aware that the striping was being done under the second amended lease.  Moreover, according to Sutton, Plaintiff was aware of all of the renovations Defendants performed under the second amended lease.  Hence, Sutton has no basis for his assertion that Caro believed Best Buy would remove the striping because Paragraph 4(g) of the second amended lease controls.

Although the question of waiver is usually inappropriate for determination on a summary judgment motion because it presents an issue of fact, Di Napoli v. Exxon Corp., 549 F. Supp. 449, 454 (D.N.J. 1982), Plaintiff has not provided any genuine issues of material facts.  Shields, 245 F.3d at 481.  Moreover, Plaintiff has not provided any evidence that would put Caro or Sutton's state of mind or intent in issue.  See Mayo, Lynch & Assocs. Inc., v. Pollack, 351 N.J. Super. 486, 500 (App. Div. 2002) (noting that it is "improper to grant summary judgment when a party's state of mind is in issue.").  Consequently, this Court concludes that Caro waived the written consent requirement for the striping which was done pursuant to the second amended lease.

ii.  Miscellaneous Damages[3]

Plaintiff alleges that when Best Buy vacated the property, it caused damages that were beyond ordinary wear and tear.  These damages included: $21,524.25 for replacing light bulbs and light bulb ballasts; $15,534.63 for carpet cleaning and replacement; $12,500 for repair to nicks and dents to columns and bollards; and $50,000 for labor to paint the walls and similar

---

[3] One of the damages Caro is seeking is the cost of repairing its parking lot.  Defendants represent that Plaintiff has withdrawn that claim.  (Defs.' Br. 11 n.1.)

projects.  (Defs.' Br. Wolin Certif. Ex. K; Defs.' Br. Wolin Certif. Ex. U; Pl.'s Opp'n Br. 16-17.)
On the other hand, Defendants maintain that they are entitled to summary judgment because
these damages are exempted under Article 22.01 of the original lease and under the second
amended lease.  (Defs.' Br. 21-22.)

The portion of Article 22.01 pertinent to the determination of this issue provides:
"Landlord agrees that Tenant will not be obligated to restore the Demised Premises with respect
to those alterations referred to in Exhibit 6 annexed hereto."  (Pl.'s Br. Buehler Decl. Ex. C, at
28.)  Exhibit 6 of the original lease refers to "All items of Initial Work" outlined in Exhibit 3.
(Id. at 00353.)  The "Initial Work" required Best Buy to: replace or upgrade the lighting and
emergency exit lighting, install carpeting, repaint offices.  (Id. at 00347.)

Contrary to Best Buy's position, Article 22.01 of the original lease did not exempt it from
its obligation to maintain the items in the "Initial Work" in good order.  As Plaintiff points out,
that provision merely instructs that Defendants did not have to remove any of the alterations they
did pursuant to Exhibit 3.  (Pl.'s Opp'n Br. 19.)  Therefore, Defendants were required to
surrender the warehouse "in good order, condition and repair, except for ordinary wear and tear."
(Pl.'s Br. Buehler Decl. Ex. C, at 28.)

"In an action for breach of express covenants to maintain and surrender a leased premises
in a particular state of repair, the proper measure of damages is the cost of the repairs needed to
return the premises to the condition specified in the lease."  Dolan Grp. v. Fresenius USA Mfg.,
Civ. A. No. 05-1853, 2007 U.S. Dist. LEXIS 77265, at *8 (D.N.J. Oct. 16, 2007) (citing Winrow
v. Marriot Corp., 230 N.J. Super. 189, 192 (App. Div. 1989)).  In such an action, "the landlord
has the burden to show the premises were damaged beyond ordinary wear and tear."  Guthmiller
v. Signal Elec., Inc., No. 58286-1-I, 2007 Wash. App. LEXIS 460, at *1 (Wash. Ct. App. Mar.

19, 2007). Other than Caro's bare assertions, it has not provided any evidence to demonstrate that the damages Plaintiff complains of exceeded ordinary wear and tear. Significantly, Plaintiff has not produced evidence indicating the condition of the warehouse at the commencement of the tenancy. See Id. (proof of damages in an action for breach of a tenant's covenant to maintain the premises in good condition except for reasonable wear and tear "requires a showing of the condition of the premises at the beginning of the" tenancy).

Nonetheless, "[w]hether the state of repair in which the premises are left is [in] sufficient compliance with the lessee's covenant to leave in the condition specified is a question of fact in each case, varying, of course, with the requirements of the covenant and the extent to which it has been complied with by the tenant." Braem Wash. v. Piece Dye Works, 100 N.J.L. 209, 210 (1924). Additionally, as the Dolan Grp. Court noted "[w]hile evidence of the condition of the Premises at the beginning of the lease might aid the trier of facts in determining what constitutes reasonable wear and tear, it is not an essential element of Plaintiff's claim such that in its absence summary judgment is warranted." 2007 U.S. Dist. LEXIS 77265, at *9. Here, Caro has offered damages for this claim by providing the cost for the repairs. (See Defs.' Br. Wolin Certif. Ex. U.)[4] One court has concluded that such evidence was sufficient to overcome a motion for summary judgment. Dolan Grp., 2007 U.S. Dist. LEXIS 77265, at *9. Additionally, on September 9, 2008, Sutton emailed Manning with a list of repairs Best Buy had to complete before vacating the warehouse. (Defs.' Br. Wolin Certif. Ex. H, at 2.) In response Manning stated: "[W]e will require the repairs to be done and invoice Best Buy for reimbursement." (Id.) In another email from Sutton to Patzke, Sutton provided a list of repairs similar to the "miscellaneous damages" Plaintiff is currently seeking. (Defs.' Br. Wolin Certif. Ex. M.)

---

[4] The costs outlined in this exhibit include the cost to remove the striping. Consistent with this Court's conclusion that Best Buy striped the warehouse floors pursuant to Paragraph 4(a) of the second amended lease, Defendants are not liable for that cost.

Patzke's response to Sutton inscribed "yes," "ok," or "no" next to each item on the list.  (Defs.' Br. Wolin Certif. Ex. N.)  Patzke testified that he wrote "yes" and "ok" next to some of the repairs because he believed they were "reasonable request[s]."  (Defs.'s Br. Wolin Certif. Ex. B, Patzke Dep. 118:2-120:6.)  These emails, as well as Patzke's testimony demonstrate Best Buy's acknowledgment that: (1) these repairs are necessary and reasonable; and (2) it is responsible, to some extent, for some of the repairs.  Consequently, Defendants are not entitled to summary judgment on this claim.

However, Defendants contend that they were not required to restore the bathrooms they removed because that renovation was done under Paragraph 4(a) of the second amended lease.  (Defs.' Br. 21.)  Yet, Plaintiff argues that Best Buy was not authorized to remove the bathrooms under Paragraph 4(a) of the second amended lease because it did not obtain written consent.  (Pl.'s Br. 20.)  Defendants' specifications, which it provided Plaintiff, indicated that it would remove the bathrooms.  (Defs.' Br. Wolin Certif. Ex. B, Patzke Dep. 46:17-19.)  As stated earlier, Caro waived the written consent requirement because it had knowledge of all of the work Defendants performed under the second amended lease but it did not raise any objections.  Therefore, Defendants are not responsible for the cost of replacing the bathrooms because they were not obligated to restore the bathrooms under Paragraph 4(g) of the second amended lease.

b.  <u>Waste</u>

Caro asserts that Best Buy committed waste on the property under N.J. Stat. Ann. § 2A:65-3. That statute provides in relevant part that "[a] civil action may be maintained . . . against the tenant, and upon a finding that waste has been committed, treble damages shall be assessed or granted, and the defendant shall lose the thing or place wasted."  N.J. Stat. Ann. § 2A:65-3. Defendants maintain that they are entitled to summary judgment on this claim because:

18

(1) they are no longer tenants at the property, and (2) their use of the property during the tenancy did not "materially alter the nature or character of the property."  (Defs.' Br. 24, 27.)

This Court finds unpersuasive Defendants' contention that the statute is limited to current tenants.  In Birch v. Hanley, 324 N.J. Super. 286 (Law Div. 1999), the court permitted the landlord to recover treble damages for waste against a former tenant.  Therefore, the statute applies to Defendants, although they are no longer Caro's tenants.

Nonetheless, this Court does agree with Best Buy's position that it did not commit waste. As one court acknowledged, the statute does not define "waste." Crewe Corp. v. Feiler, 28 N.J. 316, 324 (1958).  In Crewe Corp., the court noted that "[t]he classic view is that a tenant may not make material changes or alterations in a building to suit his taste or convenience and that any material change in the nature or character of the buildings is waste, even though the value of the property be enhanced thereby." Id.  Furthermore, the court noted that "the concept of waste is far from rigid in its practical application." Id.  Nevertheless, it concluded that a change or alteration could be waste if it was a "substantial material change[.]" Id. at 325; see also Fed. Textile Corp. v. Morgillo, 1986 Conn. Super. LEXIS 230, at *7 (Conn. Super. Ct. Apr. 14, 1986) ("An alteration denotes a substantial change.").  An alteration has also been defined as "an installation that changes the structural quality of a building." Fed. Textile Corp., 1986 Conn. Super. LEXIS 230, at *7.  An example of such a change is the "revamp[ing]" of "[a] building designed for industrial purposes . . . into an office building." Crewe Corp., 28 N.J. at 325. Another court has found that "[t]he taking down of partitions, the making of two rooms into one, [or] the putting up of permanent partitions" is waste. Pearson v. Sullivan, 176 N.W. 597, 600 (Mich. 1920).  Plaintiff's waste claim is based on two alterations Defendants made: (1) the striping and (2) the removal of the bathrooms.  (Pl.'s Opp'n Br. 22.)  Plaintiff has not established

that either of the alterations are material or that they altered the nature or character of the property.  Consequently, this Court concludes that Defendants did not commit waste.

Furthermore, as one court noted, although the primary question is whether the alteration constituted waste, "[a] subsidiary question is whether the [alteration] was necessary for the purposes of [the tenant's] business."  Harar Realty Corp. v. Michlin & Hill, Inc., 449 N.Y.S.2d 213, 218 (N.Y. App. Div. 1982).  In this case, Defendants leased the property for "[w]arehousing and distribution of non-hazardous materials . . . and ancillary office and administrative use." (Beuhler Decl. Ex. C, at 3.)  Patzke testified that Best Buy had to stripe the floor because it is required by code to "define[] the exit path out of the facility in an emergency" and the painted lines serve that purpose.  (Defs.' Br. Wolin Certif. Ex. B, Patzke Dep. 49:15-20.)  Also, he stated that the lines help Best Buy organize its inventory.  (Id. at 49:1-9.)  Furthermore, according to Senna Stein, Defendants' expert, "it is common for a tenant to stripe the floor" in a configuration suiting the tenant's purposes.  (Defs.' Br. Wolin Certif. Ex. L, Stein Dep. 55:20-23.)  Therefore, the striping was necessary for Defendants' business and does not constitute waste.  See Harar Realty Corp., 449 N.Y.S.2d at 217 (concluding that the tenant's construction of a stairway to facilitate access between two floors of the rented facility did not constitute waste because the alteration was done "to make the premises usable in the manner contemplated by" the lease).

Nonetheless, Plaintiff maintains that under the terms of the lease, Best Buy could not remove the bathrooms without obtaining Caro's consent.  (Pl.'s Opp'n Br. 22.)  Caro's argument lacks merit for two reasons.  First, for the reasons stated earlier, Plaintiff waived the written consent requirement.  Second, according to one court, the purpose of obtaining consent from a landlord before making alterations is to ensure that the tenant's alterations do not amount to waste.  Garland v. Titan W. Assoc., 543 N.Y.S.2d 56, 60 (N.Y. App. Div. 1989).  Consequently,

even if Best Buy was required to obtain consent from Caro before removing the bathrooms, the primary inquiry is whether that alteration "changed the nature and character of the demised premises so as to constitute waste." Id.  As stated earlier, the alterations Plaintiff complains of do not constitute waste.

Moreover, Defendants maintain that they removed the bathrooms pursuant to the terms of the second amended lease.  (Defs.' Br. Wolin Certif. Ex. B, Patzke Dep. 44:14-25.)  Similar to the striping, Caro waived the written consent requirement because Best Buy provided Caro with specifications on the removal of the bathrooms and Caro did not object.  (Id. at 46:17-19.) Consequently, the lack of written consent alone is not a basis to conclude that Best Buy committed waste.  See Harar Realty Corp., 449 N.Y.S.2d at 217 (finding that although the tenant could not make alterations without the landlord's consent, the "landlord had permitted without objection" to the alteration because the landlord was aware of the alterations but did not object). This Court concludes that Defendants are entitled to summary judgment on this claim.

## CONCLUSION

For the reasons stated above, Best Buy's Motion for Summary Judgment is GRANTED in part, and DENIED in part, and Caro's Motion for Partial Summary Judgment is DENIED.

s/ Susan D. Wigenton, U.S.D.J.

cc:    Magistrate Judge Madeline C. Arleo

21